IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| **TRIDEUM CORPORATION,**<br><br>*Plaintiff*,<br><br>v.<br><br>**SAWTST, LLC,**<br><br>*Defendant*. | Civil Action No._____ |

## VERIFIED COMPLAINT

Plaintiff Trideum Corporation ("Trideum"), for its verified complaint against Defendant SAWTST, LLC, states as follows:

### NATURE OF THE ACTION

1. This is a diversity action for breach of contract and tortious interference against SAWTST, LLC ("SAWTST"), a prime contractor for the United States Army Test and Evaluation Command (the "Army"). Since April 1, 2016, SAWTST has held an 8(a) set-aside contract to provide the Army with Test and Evaluation Technical Support Services ("TETSS"). Since February 1, 2020, Trideum has served as a subcontractor under SAWTST's prime contract with the Army. Trideum employees currently perform roles that are critical to the success of the prime contract.

1

2. SAWTST's prime contract is nearing the end of its term. Because SAWTST has graduated from the 8(a) business development program, SAWTST will not be eligible to continue serving as the prime contractor after its current contract expires. Instead, the follow-on contract will be transitioned to a new 8(a) contractor.

3. When competing for the follow-on contract, a prospective contractor who can offer the Army an experienced incumbent workforce (either on its own or with teaming partners) will have a significant competitive advantage over others. But therein lies the problem for SAWTST, because a dozen of the most important incumbent employees are presently employed by its subcontractor, Trideum. As a result, Trideum is a strategically valuable teaming partner for prospective 8(a) contractors who might seek to compete for the follow-on contract. This also makes Trideum a potential competitor to SAWTST in the next re-compete.

4. SAWTST's solution to this dilemma? Remove Trideum and poach its employees before end of the current contract.[1] On April 22, 2021, SAWTST notified

---

[1] This unscrupulous tactic is not a new idea. SAWTST is not the first outgoing prime contractor who has to tried to kill the competition from its subcontractor as the end of their agreement was approaching. *See Beacon Associates, Inc. v. Apprio, Inc.,* 308 F. Supp. 3d 277, 280 (D.D.C. 2018) (granting a preliminary injunction preventing the prime contractor from terminating the parties' subcontract and poaching the subcontractor's employees).

Trideum that it was terminating their Subcontract Agreement "for convenience" (even though the subcontract does not allow SAWTST to do so) because "SAWTST has determined that it is not in its best interest to continue the current teaming arrangement." Immediately thereafter, in violation of the 1-year "Non-Hire" provision in the Subcontract Agreement, SAWTST began directly soliciting Trideum's employees to abandon their employment in order to consolidate their existing positions under the umbrella of SAWTST.

5. SAWTST's hostile and calculated actions not only breached the Subcontract Agreement but are a deliberate effort to eliminate Trideum as a viable future competitor while strengthening SAWTST's competitive position to obtain work as a potential subcontractor under the next prime contract. If SAWTST is allowed to carry out its present scheme, not only will Trideum lose remaining value of the existing Subcontract Agreement, including valuable past performance experience, Trideum will lose its incumbent workforce along with most of its value as potential teaming partner for the next contract.

6. Through this action, including the contemporaneously filed Motion for Temporary Restraining Order and Preliminary Injunction, Trideum seeks judgment based on SAWTST's breach of contract and tortious interference; an award of damages; and injunctive and declaratory relief rescinding the improper termination,

70273712v.1

immediately restoring the Subcontract Agreement, and enjoining SAWTST from soliciting or employing Trideum's employees in violation of that Agreement.

## PARTIES

7. Trideum Corporation is an Alabama corporation with its principal place of business at 675 Discovery Drive NW #300, Huntsville AL 35806.

8. SAWTST, LLC, is a Georgia limited liability company with its principal place of business at 500 Swanson Road, Suite 4, Tyrone, GA 30290.

9. SAWTST is a single-member LLC and is 100% owned by Ronald W. Saxton who is believed to be a Georgia resident. SAWTST has no members who are Alabama residents.

10. For diversity purposes, Trideum is a citizen of Alabama, and SAWTST is a citizen of Georgia. Therefore, complete diversity exists between the parties.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) there is diversity of citizenship between Trideum and SAWTST; and (b) the amount in controversy exceeds $75,000 exclusive of interest and costs.

12. This Court has general *in personam* jurisdiction over SAWTST because Georgia is its home state. SAWTST is a Georgia limited liability company, owned by a Georgia resident, with its principal place of business in Georgia.

13. Venue is appropriate in this district under 28 U.S.C. 28 U.S.C. § 1391 because SAWTST has its principal place of business in the Northern District of Georgia, with its principal place of business in within the Newnan Division in Tyrone, Fayette County, Georgia.

## FACTUAL ALLEGATIONS

14. Trideum was founded as a Test and Evaluation (T&E) company in 2005. Supporting predominantly the Department of Defense, Trideum's broad range of expertise has been gained through hands-on execution in the design, development, integration, and sustainment of technical and software solutions, specializing in the areas of Cybersecurity, Design & Engineering, Modeling & Simulation, Test & Evaluation, Training & Development, Unmanned Systems, and User Experience. Trideum is a recognized leader in test modernization and innovation, with experts in all aspects of distributed test integration and evaluation execution.

15. In approximately April 2016, SAWTST entered into Contract No. W911-51-16-D-0007 (the "Prime Contract") with the Army Test and Evaluation Command to provide Test and Evaluation Technical Support Services ("TETSS").

The Prime Contact was an 8(a) set-aside under the Small Business Administration's ("SBA") 8(a) Business Development Program.

16. At the time of the award of the Prime Contract, SAWTST was a participant in the SBA's 8(a) Business Development Program. The Prime Contract was awarded to SAWTST as an 8(a) set-aside contract. Once a contract has been accepted by the SBA for inclusion in the 8(a) program, any follow-on contract generally must remain in the 8(a) program unless the SBA agrees to release it for non-8(a) competition. Effectively, this means that only an 8(a) contractor can compete to serve as the prime contractor for the TETSS program.

17. During the initial years of the Prime Contract, SAWTST received subcontract support from Research, Analysis, and Maintenance, Inc. ("RAM"). During that time, a subcontract agreement existed between SAWTST and RAM.

18. In approximately January 2020, in order to obtain the opportunity to perform as a subcontractor under the Prime Contract and to obtain the benefits flowing therefrom, including revenue and invaluable past performance experience, Trideum purchased the assets of RAM and thereby acquired the RAM employees who were supporting the Prime Contract.

19. On February 1, 2020, SAWTST and Trideum entered into a Subcontract Agreement (No. 2020-TRI-0007), a copy of which is attached hereto as Exhibit 1.[2]

20. Accompanying the Subcontract Agreement, SAWTST issued Trideum a series of initial orders totaling more than $200,000 covering the period of February 1, 2020 to April 19, 2020.

21. Trideum has continued to serve as a subcontractor in support of the Prime Contract since February 1, 2020. As of April 2021, Trideum had approximately twelve (12) full-time employees and one (1) part-time employee assigned to the TETSS program. Additionally, to continue to support the needs of the Army, Trideum had projected to add approximately 20-30 employees for an upcoming testing effort starting in June 2021.

---

[2] The Subcontract Agreement was preceded by several documents that are not at issue in the instant dispute, including an Assumption and Novation Agreement and an Exclusive Teaming Agreement. By its express terms, the Subcontract Agreement "constitutes the entire agreement and understanding between the parties hereto and shall supersede and replace any and all prior or contemporaneous representations, agreement, or understandings of any kind, whether written or oral, relating to the subject matter hereof." (Subcontract Agreement, p. 14, ¶ 41.0, Entire Agreement).

22. Trideum has performed its obligations under the Subcontract Agreement. Trideum is not currently in default of any of its obligations under that agreement.

23. The Army has not terminated either the Prime Contract or Trideum's work under the Prime Contact.

24. On or about April 13, 2021, SAWTST issued a Notice to Proceed letter to Trideum related to additional work that Trideum was to perform under the Subcontract Agreement. A copy of the Notice to Proceed is attached hereto as Exhibit 2.

25. On or about April 22, 2021, SAWTST issued a letter to Trideum entitled "Termination for Convenience to Subcontract 2020-TRI-0007" (hereinafter the "Termination Notice"). A copy of the Termination Notice is attached hereto as Exhibit 3.

26. The Termination Notice stated that SAWTST was terminating its agreement with Trideum effective April 27, 2021, with the "last day for all projects" to be May 26, 2021 (Termination Notice, p. 1). As the reason for termination, SAWTST stated, "SAWTST has determined that it is not in its best interest to continue the current teaming arrangement." (*Id.*).

27. The Subcontract Agreement contains "Termination by Default" provisions (*see* Subcontract Agreement, p. 3, ¶ 7.0, Termination by Default); however, the Subcontract Agreement does not permit termination for convenience by SAWTST unless "the Subcontractor's work or the Prime Contract itself has been terminated by the Government." (*Id.*, p. 4, ¶ 17.1 m.).

28. SAWTST is not entitled to terminate the Subcontract Agreement "for convenience" because the Government has not terminated Trideum's work, nor has the Prime Contract been terminated. Similarly, SAWTST is not entitled to terminate the Subcontract Agreement "for default" because Trideum is not presently in default as to any of its obligation under the agreement. As a result, there no legitimate basis for SAWTST to terminate the Subcontract Agreement.

29. Because the SAWTST is not entitled to terminate the Subcontract Agreement, SAWTST's issuance of the Termination Notice to Trideum constitutes a breach and/or anticipatory breach of the Subcontract Agreement.

30. At the time of the Termination Notice, there was still approximately one year left under the term of the existing Subcontract Agreement. The remaining value of the Subcontract Agreement and the accompanying purchase orders from SAWTST significantly exceeds $75,000. Trideum presently estimates that the work remaining under the existing Subcontract Agreement exceeds $1.7 million.

70273712v.1

31. The Subcontract Agreement also contains a "Non-Hire" provision. The Non-Hire provision states:

> During the terms [sic] of this Subcontract, including any extension or renewal thereof, and for a period of one (1) year thereafter, neither Party shall directly or indirectly solicit, or recruit any employee(s) of the other Party who is associate with the performance of any elements of the Subcontract (and any extensions or modification), whatever tier, or work contemplated or performed directly under this Subcontract, either as an employee (part time or full time) or as a consultant, without the prior written consent of the other Party. Direct solicitation does not include advertisements published in the general media and, except to the extent than an individual was specifically encouraged to respond to such advertisements, northing in this Section restricts an individual employee's right to seek employment with the other party on an unsolicited basis.

(Subcontract Agreement, p. 8, ¶ 18, Non-Hire).

32. Contemporaneously with attempting to terminate the Subcontract Agreement, SAWTST posted the positions of Trideum's existing employees to Indeed.com. Copies of SAWTST's job postings are attached hereto as Exhibit 4. The specific positions being advertised by SAWTST are positions currently held by Trideum.

33. Immediately after issuing the Termination Notice to Trideum, SAWTST began contacting Trideum's employees soliciting them to leave Trideum and join SAWTST. Multiple Trideum employees have been directly contacted by SAWTST employees and told to apply for their positions posted on Indeed.com.

Trideum employees have been told that SAWTST intends to have all of Trideum's positions by the end date listed in the Termination Notice.

## COUNT I
### (BREACH OF CONTRACT – TERMINATION)

34. The Subcontract Agreement is a valid and enforceable agreement between SAWTST and Trideum.

35. Trideum has performed its obligations under the Subcontract Agreement. Trideum is not in default under the Subcontract Agreement.

36. The Subcontract Agreement does not allow SAWTST to terminate "for convenience" unless Trideum's work or the Prime Contract is terminated by the Government. Neither Trideum's work, nor the Prime Contract have been terminated by the Government – which is precisely why SAWTST is trying to hire Trideum's employees to continue performing that work under SAWTST.

37. SAWTST's purported termination of the Subcontract Agreement without justification constitutes a breach and/or anticipatory breach of the agreement.

38. SAWTST's breach of the Subcontract Agreement is damaging Trideum and will result in irreparable harm to Trideum. Trideum's most valuable assets are its talented workforce and the past performance experience it can cite when submitting proposals. Trideum also relies upon the revenue from the Subcontract

Agreement to pay and retain the employees who working under that Agreement and to cover its corporate general and administrative ("G&A") and overhead expenses. If SAWTST is permitted to terminate the Subcontract Agreement, Trideum will not have the ability to retain the employees who are presently working for Trideum. Trideum's employees will have no choice but to leave Trideum and join SAWTST. Further, Trideum will lose the invaluable past performance that would come with completing the remainder of the Subcontract Agreement, along with its value as a potential teaming partner to prospective contractors who are seeking to compete for the work in the next re-compete.

39. SAWTST's breach of the Subcontract Agreement and wrongful termination are damaging Trideum in an amount to be determined at trial, including the loss of revenue, G&A, overhead, and profit from the work that SAWTST was obligated to award to Trideum, and is causing Trideum unquantifiable and irreparable harms in the form of present and future lost or impaired business opportunities as described herein.

## COUNT II
### (BREACH OF CONTRACT - NON-HIRE)

40. The Subcontract Agreement is a valid and enforceable agreement between SAWTST and Trideum.

41. Trideum has performed its obligations under the Subcontract Agreement. Trideum is not in default under the Subcontract Agreement.

42. The Non-Hire provision prohibits SAWTST from directly or indirectly soliciting employees of Trideum during the term of the Subcontract Agreement and for a period of one (1) year thereafter.

43. SAWTST is breaching the Subcontract Agreement by directly soliciting Trideum's employees to leave Trideum and join SAWTST prior to the expiration of the Non-Hire provision.

44. SAWTST's breach of the Subcontract Agreement is damaging Trideum and will result in irreparable harm to Trideum. Trideum's most valuable asset is its talented workforce, which is being poached by SAWTST in violation of the Non-Hire provision in the Subcontract Agreement.

45. SAWTST's breach of the Subcontract Agreement and violation of the Non-Hire provision are damaging Trideum in an amount to be determined at trial, including the loss of revenue and profit from the work that SAWTST was obligated to award to Trideum, and is causing Trideum unquantifiable and irreparable harms in the form of present and future lost or impaired business opportunities as described herein.

## COUNT III
### (TORTIOUS INTERFERENCE WITH CONTACT OR BUSINESS RELATIONSHIP)

46. A contract or business relationship exists between Trideum and its employees, including those employees who are assigned to the TETSS program to perform work for Trideum under the Subcontract Agreement.

47. SAWTST, by virtue of its position as the prime contractor, knows of the contract or business relationship between Trideum and its employees, and SAWTST knows of the specific Trideum employees who are performing work under the Subcontract Agreement.

48. SAWTST is intentionally interfering in the relationship between Trideum and its employees by inducing Trideum's employees to abandon their employment at Trideum in order to bring their positions under the umbrella of SAWTST. SAWTST is inducing or attempting to induce Trideum's employees to discontinue their existing relationships with Trideum.

49. Trideum also has present and prospective business relationships with the Army, and a reasonable business expectancy of future contracts related to test and evaluation technical support services, including work on or under the follow-on contract.

50. SAWTST's wrongful conduct interferes with Trideum's ability to compete on a common basis.

51. SAWTST's wrongful conduct is specific intended by SAWTST to give it an unfair competitive advantage.

52. SAWTST's actions, including specifically its interfering with Trideum's relationship with its employees, are improper and without privilege. SAWTST's actions are expressly prohibited by the Non-Hire provision in the Subcontract Agreement between the parties.

53. SAWTST's actions are purposeful and with malice intent to injure Trideum. SAWTST's actions are motivated by an intent to eliminate Trideum as a potential competitor while simultaneously misappropriating the value of Trideum's talented workforce for itself.

54. SAWTST's actions are damaging are damaging Trideum in an amount to be determined at trial and is causing Trideum unquantifiable and irreparable harms in the form of present and future lost or impaired business opportunities as described herein.

## COUNT IV
## (DECLARATORY RELIEF)

55. There is an actual, substantial, justiciable and continuing controversy between Trideum and SAWTST as to which the parties have adverse legal interests. This controversy includes whether or not the Subcontract Agreement has been permissibly terminated or whether it ought to remain in effect and whether

SAWTST's solicitation of Trideum's employees constitutes an ongoing breach of that Agreement.

56. As a party to the Subcontract Agreement, Trideum is an interested party in this actual controversy seeking a declaration of its rights and other legal relations.

57. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and Rule 57 of the *Federal Rules of Civil Procedure*, Trideum seeks a judgment from this Court declaring:

a. That SAWTST breached the Subcontract Agreement by improperly attempting to terminate the agreement;

b. That SAWTST breached the Non-Hire provision by directly or indirectly soliciting Trideum's employees;

c. That the Subcontract Agreement is reinstated and restored to the *status quo ant*e that existed before SAWTST's improper termination; and

d. That SAWTST may not solicit or employ Trideum's employees in violation of the Non-Hire provision.

### COUNT IV
### (PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

58. Trideum further shows that (a) there is a substantial likelihood that Trideum will prevail on the merits of this action; (b) the harm to SAWTST, if an injunction as sought herein is granted, is less than the harm that will occur to

Trideum if the injunction is not granted, (c) Trideum does not have an adequate remedy at law, and (d) irreparable harm and injury will occur to Trideum if SAWTST is permitted to effect the purported termination of the Subcontract Agreement and hire away Trideum's employees.

59. Trideum respectfully requests that this Court issue a preliminary and permanent injunction restraining and enjoining SAWTST, and any of its parents, subsidiaries, affiliates, predecessors, successors, agents, employees, servants, attorneys and any others acting in concert or participation with them from (1) attempting to effect the purported termination of the Subcontract Agreement, or (2) soliciting or hiring any person who, at the time of the purported termination, was one of Trideum's employees.

## PRAYER FOR RELIEF

WHEREFORE, Trideum demands judgment in its favor against SAWTST:

1. Granting Trideum injunctive and declaratory relief;

2. Awarding Trideum compensatory damages, including lost profits, G&A, and overhead;

3. Awarding Trideum punitive damages for interference;

4. Awarding Trideum reasonable attorneys' fees, costs, and disbursements;

70273712v.1

5.	Awarding Trideum pre- and post-judgment interest; and,

6.	Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 4th day of May, 2021.

>	/s/ Robert C. Stevens
>	Robert C. Stevens
>	Georgia Bar No. 680142
>	*Counsel for Trideum Corporation*
>	SEYFARTH SHAW, LLP
>	1075 Peachtree Street, N.E.
>	Suite 2500
>	Atlanta, Georgia 30309-3958
>	(404) 885-6727
>	bstevens@seyfarth.com
>
>	*Additional Counsel for Trideum Corporation*
>	Application for Appear Pro Hac Vice Pending
>	Richard J.R. Raleigh, Jr.
>	Jerome S. Gabig
>	Christopher L. Lockwood
>	Wilmer & Lee, P.A.
>	100 Washington Street, Suite 100
>	Huntsville, AL 35801
>	(256) 533-0202
>	rraleigh@wilmerlee.com
>	jgabig@wilmerlee.com
>	clockwood@wilmerlee.com

## VERIFICATION

I, Favio Lopez, pursuant to 27 U.S.C. § 1746, declare as follows:

1. I am an adult resident of Fairfax, Virginia.

2. I am the President and Chief Operating Officer of Trideum Corporation.

3. I have reviewed the factual allegations set forth in paragraphs 7 to 10 and 14 to 33 of the Verified Complaint and declare under penalty of perjury that those allegations are true and correct to the best of my knowledge. Note that my personal knowledge consists of information that (a) I personally learned contemporaneous to the events described in the Verified Complaint, (b) I personally learned in the performance of my job; and (c) I personally learned by participating in Trideum's investigation of the facts described.

Executed in Fairfax County, Virginia this __4__ day of May, 2021.

_____
Favio Lopez